U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED
MAY 2 6 2006
ROBERT H. SHEMWELL, CLERK
            DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| CAROL BAUM | CIVIL ACTION NO. 05-0859 |
| VERSUS | JUDGE DRELL |
| COMMISSIONER OF SOCIAL SECURITY | MAGISTRATE JUDGE KIRK |

REPORT AND RECOMMENDATION

Carol Baum ("Baum") seeks judicial review of the Commissioner of Social Security's ("Commissioner") final decision denying her claim for social security benefits. The issue to be decided is whether there is substantial evidence in the record to support the finding of the Administrative Law Judge ("ALJ") that Baum is not disabled.

Baum was born in 1945, completed high school, and received training as a certified nursing assistant. (R. 385-386.) Her past relevant work was as a utility worker, manager of a convenience store, and nurse's assistant. (R. 408-09.) Baum protectively filed applications for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") on May 29, 1991, alleging disability as of that date. (R. 76-79, 330-332.) The application was denied initially and on reconsideration, and a request for hearing was timely filed. On October 23, 2002, a hearing was held before an Administrative Law Judge ("ALJ"). A decision unfavorable to the claimant was rendered by the ALJ on February 27, 2003. (R. 29-37.) A request for review of that

decision was made and, on October 24, 2003, the Appeals Council vacated the decision and remanded the case. (R. 38-40.) A supplemental hearing was held before the same ALJ on February 26, 2004. A new decision was issued on May 25, 2004, wherein the ALJ again denied benefits. The ALJ's decision became the final decision of the Commissioner, and the instant lawsuit was filed.

To qualify for disability insurance benefits, a claimant must meet certain insured status requirements, be under age 65, file an application for such benefits, and be under a disability as defined by the Social Security Act. 42 U.S.C. 416(i), 423. Establishment of a disability is contingent upon two findings. First, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death, or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. 423 (d)(1)(A). Second, the impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. 423(d)(2).

To qualify for SSI benefits, a claimant must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. 1381(a). Eligibility is dependent upon disability, income, and other financial resources. 42 U.S.C. 1382(a). To establish disability, a claimant must demonstrate a medically determinable physical or mental impairment that can be expected to

2

last for a continuous period of not less than 12 months. Claimant must also show that the impairment precludes performance of the work previously done, or any other kind of substantial gainful employment that exists in the national economy. 42 U.S.C. 1382(a)(3).

## SCOPE OF REVIEW

In considering Social Security appeals such as the one that is presently before the Court, the Court is limited by 42 U.S.C. §405(g) to a determination of whether substantial evidence exists in the record to support the Commissioner's decision and whether there were any prejudicial legal errors. Crouchet v. Sullivan, 885 F.2d 202, 204 (5th Cir. 1989). For the evidence to be substantial, it must be relevant and sufficient for a reasonable mind to support a conclusion; it must be more than a scintilla but need not be a preponderance. Falco v. Shalala, 27 F.3d 160, 162 (5th Cir. 1994), citing Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 482 (1971). Finding substantial evidence does not involve a simple search of the record for isolated bits of evidence which support the Commissioner's decision, but must include a scrutiny of the record as a whole. The substantiality of the evidence must take into account whatever in the record fairly detracts from its weight. Singletary v. Bowen, 798 F.2d 818, 823 (5th Cir. 1986).

A court reviewing the Commissioner's decision may not retry

3

factual issues, reweigh evidence, or substitute its judgment for that of the fact-finder. Fraga v. Bowen, 810 F.2d 1296, 1302 (5th Cir. 1987); Dellolio v. Heckler, 705 F.2d 123, 125 (5th Cir. 1983). The resolution of conflicting evidence and credibility choices is for the Commissioner and the ALJ, rather than the court. Allen v. Schweiker, 642 F.2d 799, 801 (5th Cir. 1981). Also, Anthony v. Sullivan, 954 F.2d 289, 295 (5th Cir. 1992). The court does have authority, however, to set aside factual findings which are not supported by substantial evidence and to correct errors of law. Dellolio, 705 F.2d at 125.

ISSUES

Baum raised the following issue for review:

1. Whether the ALJ erred by failing to adhere to the directives set forth in the Appeals Council's Remand Order.

Summary of Pertinent Facts

Baum alleges that the conditions limiting her ability to work include major depression, degenerative disc disease of the spine, and panic disorder. (R. 96.) Baum lives alone and cares for herself and her dog. (R. 109.) She watches television, washes clothes, washes dishes and cooks on an average day. (R. 109.) It takes her anywhere from ten minutes to two hours to prepare her meals. (R. 110.) She is afraid to drive, and only goes outside of the house once or twice a week. (R. 112.) She can walk one mile before having to stop or becoming out of breath. (R. 115.)

On February 23, 2001, Baum was transferred from Crossroads Regional Hospital to Rapides Regional Medical Center for an evaluation of complaints of night sweats, fever, and chills. The triage nurse reported that Baum's speech was slurred and she gave indirect answers to the nurse's questions. (R. 201.) Baum was not having any pain. She was administered thiamine[1] and transferred back to Crossroads in stable and improved condition. (R. 198-200.)

Baum returned to Rapides Regional on April 27, 2001, presenting a history of alcohol abuse, hypertension, hypothyroidism, and depression. (R. 194.) She was vomiting and complained of weakness. Her potassium was low and she had a high blood alcohol level. Dr. Saad examined Baum at the hospital, and his initial impression was alcohol abuse, history of depression, possible seizure, possible chest pain, pancreatitis with elevated amylase, alcoholic liver disease, and hypothyroidism. (R. 194-195.) Dr. Saad ordered a number of tests, and Baum was again administered Thiamine.

A consultation was performed by Dr. Wesley W. Davis, M.D., who noted that Baum was having alcohol withdrawal and had multiple

---

[1] A deficiency of thiamine can cause weakness, fatigue, psychosis, and nerve damage. Thiamine deficiency in the U.S. is most often seen in alcoholics, because heavy drinking limits the ability of the body to absorb this vitamin from foods. www.medlineplus.gov

5

strong risk factors for coronary artery disease. (R. 182.) Another consultation was performed by Dr. M. Riad Hajmurad, M.D., who noted that Baum was taking benzodiazepine for her nerves, and had an elevated alcohol level in her blood. (R. 179.) Baum admitted that she has been drinking "all the time." (R. 179.) Dr. Hajmurad stated that he doubted that Baum had seizures. Rather, he opined that her dizziness was probably related to alcohol and medication. (R. 180.) On April 30, 2001, a heart catheterization and angiogram were performed. The impression was Coronary Artery Disease. Dr. Wesley Davis's recommendation was "medical management." (R. 171.)

Baum was discharged from the hospital on May 1, 2001, with instructions to follow-up with Dr. Saad in one month. The doctor recommended that Baum stop smoking and drinking. (R. 168.) The final diagnosis was: "weakness with chest pain, non-cardiac; hyponatremia; hyperkalemia, resolved; seizure probably related to alcohol withdrawal; hypothyroidism; macrocytosis due to alcoholism; urinary tract infection; hypoxia due to chronic obstructive pulmonary disease; and elevation of liver function tests due to alcohol." (R. 168.)

On May 7, 2001, Baum voluntarily admitted herself to Crossroads Regional Medical Center, where she had previously been treated from February 24, 2001, through March 5, 2001. During her May inpatient stay at Crossroads, Baum reported that she was living

with her husband and had applied for disability. (R. 220.) Baum reported that Dr. Saad told her that she needed to be hospitalized for alcohol dependency and depression. (R. 224, 228.) She advised that her drinking had increased, that she drank approximately a pint of alcohol a day, and that her depression had increased. Her thyroid condition was not controlled due to her alcohol binge drinking and dependency, which led to noncompliance with her medications. (R. 228.) Upon admission, Baum was unsure of what medications she was taking, and stated that she smoked two packs of cigarettes a day, and had smoked that much for the past twenty years. (R. 228.)

A psychiatric evaluation was conducted at Crossroads by Dr. Edwin R. Urbi, M.D. (R. 224-227.) Baum denied drug use, but the doctor noted that she had tested positive for amphetamines and opiates during her prior hospital admission in February 2001. (R. 224.) Baum reported that her son had committed suicide, and that she has since contemplated committing suicide. (R. 225.) Baum was treated at Crossroads for seven days, and was discharged on May 24, 2001. Her medications upon discharge were Remeron, Doxepin, Ramipril SR, Flexeril, and Vioxx. (R. 223.) She was instructed to follow up with Dr. Doug Goodin on May 29, 2001, and with Jena Outreach regarding her substance abuse. (R. 223.) Her final diagnosis upon discharge was major depressive disorder recurrent severe without psychosis, alcohol dependency, and dementia

secondary to alcohol use.

Baum was treated at Hardtner Medical Center on January 29, 2001, through February 2, 2001. Dr. John R. Colaluca, D.O., noted that Baum had a history of smoking two packs of cigarettes per day for the last forty years, obstructive pulmonary disease and chronic bronchitis with emphysema depression, arthritis and hypertension. Baum reported that she drank alcohol socially. (R. 312.) Baum presented with rapid heart beat, shortness of breath, and congestion. She was admitted to the hospital and diagnosed with right lower lobe pneumonia, strep pneumoniae, exacerbation of chronic obstructive pulmonary disease, pyelonephritis with Alpha Strept, iron deficiency anemia, malnutrition, and macrocytosis. (R. 313.) Baum was discharged on February 2, 2001, with instructions to follow up at her next regular appointment.

Baum was treated at Hardtner on November 15, 2001. The diagnosis was uncontrolled hypertension, and Baum was instructed to go home and relax. (R. 305.) Baum reported to Hardtner again the next day with complaints of chest pain. (R. 301.) A chest x-ray revealed platelike atelectasis or chronic changes of the left lung base. (R. 303.) She was transferred to Rapides Regional for a head CT. (R. 293.)

Baum returned to Hardtner on March 8, 2002, with complaints of weakness, dizziness, and nausea. She reported that she had cut down her smoking to one pack per day, and had not had a drink for

a few months. (R. 293.) Baum was admitted to the hospital with a provisional diagnosis of hypotension, dehydration, gastritis and vertigo. (R. 294.) She was released the next day. (R. 292.) She was treated at Hardtner again for panic attacks on May 31, 2002, and on August 31, 2002.

On May 2, 2001, Dr. Colaluca completed a Disability Insurance Attending Physician's Statement for Standard Insurance Company. (R. 236-240.) Dr. Colaluca assessed a GAF[2] score of 41, and opined that Baum's estimated IQ was between 85-115, which is the range for the middle two-thirds of the population. (R. 237.) The doctor stated that he has treated Baum once a month from May 1997 through May 2, 2001, the date he completed the form. (R. 238.)

A Psychiatric Review Technique form was completed by Stan Golon, M.D. on August 13, 2001. (R. 249-263.) Dr. Golon opined that Baum suffered from major depression, recurrent, characterized by appetite disturbance, sleep disturbance, decreased energy, and

---

[2]The Global Assessment of Functioning, or GAF, score represents Axis V of the Multiaxial Assessment system. The axial system of evaluation enables the clinician to comprehensively and systematically evaluate a client. Diagnostic and Statistical Manual of Mental Disorders, Text Revised, pp. 25-30 (4th ed. 2000) ("DSM-IV-TR"). GAF is a standard measurement of an individual's overall functioning level. The GAF score is a subjective determination that represents the clinician's judgment of the individual's overall level of functioning with respect to psychological, social and occupational functioning, on a hypothetical continuum of mental health-illness. A GAF score of 41-50 indicates serious symptoms OR serious impairment with social, occupational, or school functioning. DSM-IV-TR, at 34. Also, Boyd v. Apfel, 239 F.3d 698 (5th Cir. 2001).

thoughts of suicide. (R. 252.) Baum also had a substance addiction disorder. Dr. Golon evaluated Baum's functional capacity under listing 12.04. He found that Baum had no restriction of activities of daily living, mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence, or pace, and one or two episodes of decompensation. (R. 259.) Dr. Golon opined that Baum's alcohol abuse and dependence were material to her psychological issues, depression, and medical problems. (R. 263.) The doctor found that Baum's allegations were primarily medical in nature, that any impairment would be medical in nature, and that her allegations were credible and consistent with the treatment notes. (R. 263.)

On August 15, 2001, Baum was treated by Dr. Basil Trunzler, M.D., at the medical center in Sicily Island, Louisiana. (R. 266.) She reported that she had a stroke in April 2001, and that she was transferring to Dr. Trunzler from her doctor in Urania. The doctor provided Baum with refills of Vioxx, Flexeril, hydrocodone, and Remeron. Baum followed up with Dr. Trunzler on September 17, 2001, and she was provided refills of Halcion, Lotrel, doxepin, and Claritin-D. (R. 264.)

On March 19, 2002, David Hebert, M.D., evaluated Baum's condition. She claimed that she had stopped drinking and that she smoked one pack of cigarettes per day. (R. 270.) Upon physical examination, Baum smelled heavily of tobacco and appeared genuinely

depressed. (R. 271.) She was oriented as to person, place, situation and date. Dr. Hebert found that physically Baum could sit, stand, walk, carry, and lift, and do any activity expected of a middle aged female for eight hours a day. However, her depression had not responded well to medication, and in that condition, she could not be in a social or work situation for more than one hour per day. (R. 272.) The doctor opined that Baum needed additional treatment for depression. He also noted that Baum had chronic obstructive pulmonary disease and hypothyroidism, and that her alcohol liver disease should subside since Baum was now sober. (R. 272.)

A psychological evaluation was performed by Dr. James W. Quillin for Disability Determination Services on April 3, 2002. (R. 278-282.) At the time of the consultation, Baum was alert, oriented, friendly, cooperative, and neatly dressed. (R. 278-279.) Her remote memory was good and immediate recall was adequate, and she had fluent, coherent speech, and linear thoughts. Her affect was intact, but her mood was depressed and anxious. She reported having episodic suicidal thoughts, but she was not suicidal at the time of the evaluation. (R. 279.) Baum could understand and follow simple directions and instructions. She had a high school reading recognition capacity, and she could perform simple arithmetic operations. She reported taking Effexor and Trazadone. (R. 279.) A presumptive diagnosis of Major Depression, Recurrent,

Moderate was issued as well as Generalized Anxiety Disorder, Moderate to Severe. Baum also had Alcohol Dependence, which, according to Baum's reported history, was in Early Sustained Remission. (R. 279.) Dr. Quillin opined that Baum's condition would likely be a significant limiting factor with respect to attempts to return to a more functional status. He also noted that Baum had a slight limitation in her abilities to make judgments on simple work-related decisions, to interact appropriately with the public, co-workers, or her supervisor, and a moderate limitation on her abilities to respond appropriately to work pressures and changes in a routine work setting. (R. 280-281.)

In November 2003, Baum sought treatment at the Jonesville Mental Health Center for depression and anxiety. The assessment was low grade depression requiring medication. Treatment notes from November 2003 through February 2004 indicated that Baum was doing better with her medication, but still complaining of depression. (R. 322-329.)

Issue No. 1: Whether the ALJ erred by failing to adhere to the directives set forth in the Appeals Council's Remand Order.

The Appeals Council remanded the case after the first decision because the decision did not "contain an adequate evaluation of the examining source opinions." (R. 39.) The Appeals Council specifically referenced the opinions of Dr. Quillin and Dr. Hebert, noting that the decision provided the findings of those physicians,

but did not provide how much weight was given to those opinions or what the rationale was for the weight given. (R. 39.) Second, the Appeals Councils found that, in evaluating Baum's credibility, the ALJ should have discussed "the following factors in evaluating the intensity, persistence and limiting effects of the alleged symptoms: medical opinions; prior work record; daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication; treatment other than medication; and other measures used to relieve symptoms. (R. 39.) Third, the Council found that the ALJ failed to evaluate the severity or effects of Baum's mental impairment pursuant to 20 CFR 416.920a. Finally, while the ALJ determined that, in light of Baum's residual functional capacity ("RFC"), she could return to her past work as a convenience store manager, the ALJ failed to provide the physical and mental requirements of that work. (R. 40.) After remand, the ALJ issued a second decision, again unfavorable to the claimant. The Appeals Council denied review and the instant lawsuit ensued. The Court must now determine whether the decision of the ALJ is supported by substantial evidence in the record.

Dr. Colaluca opined that Baum's impairments precluded any type of employment. However, the ALJ found that Dr. Colaluca's opinion was conclusory and not consistent with other evidence of record.

The only records that were submitted by Dr. Colaluca were his reports from Hardtner diagnosing Baum with "Right lower lobe pneumonia, Strep pneumoniae, Exacerbation of chronic obstructive pulmonary disease, Pyelonephritis with Alpha Strept, Iron deficiency anemia, Malnutrition, and Macrocytosis" (R. 313) and his Attending Physician's Statement prepared for Standard Insurance Company. The ALJ noted that, while the treatment records indicate a treating relationship between Dr. Colaluca and Baum[3], no records of treatment by this doctor prior to 2001 were submitted. Additionally, the ALJ noted that Dr. Colaluca's opinion was made in the context of Baum's application for disability retirement benefits from her employer.

Still, while Dr. Colaluca's opinion may be conclusory, it is corroborated by the opinions of Dr. Quillin and Dr. Hebert, and it is consistent with other evidence of record. Dr. Quillin conducted an evaluation for DDS in April 2002. He found that Baum's mood was depressed and anxious. (R. 279.) Baum could understand and follow simple directions and instructions; she had a high school reading recognition capacity; and, she could perform simple arithmetic operations. Baum reported taking Effexor and Trazadone. (R. 279.) Dr. Quillin noted that Baum had a slight limitation in her ability to make judgments on simple work-related decisions and in her

---

[3]"She is to follow up in clinic at her regularly scheduled time...." (R. 311.)

14

ability to interact appropriately with the public, co-workers, or her supervisor. She had a moderate limitation in her ability to respond appropriately to work pressures and changes in a routine work setting. (R. 280-281.) Dr. Quillin opined that Baum's depression and anxiety disorder would likely be a significant limiting factor with respect to any attempts to return to a more functional status.

Likewise, Dr. Hebert evaluated Baum's condition in March 2002. Dr. Hebert found that Baum appeared genuinely depressed. (R. 271.) She was oriented as to person, place, situation and date. Physically, Baum could sit, stand, walk, carry, and lift, and do any activity expected of a middle aged female for eight hours a day. However, her depression had not responded well to medication, and in her condition, she could not be in a social or work situation for more than one hour per day. (R. 272.) The doctor opined that Baum needed additional treatment for depression. He also noted that Baum had chronic obstructive pulmonary disease and hypothyroidism, and that her alcohol liver disease should subside since Baum was now sober. (R. 272.)

According to the record, Baum's complaints of depression are certainly supported; (R. 194-195, 224, 228, 310-312, 249-263, 270-272, 279, 322-329); her daily activities are severely limited (R. 387, 393-395, 396, 398-401, 403-407); she has taken medication to help with her illnesses; and, despite receiving inpatient and

outpatient treatment for depression, she has continued to experience symptoms of depression. The ALJ stated, "The claimant's depression and anxiety are sufficiently documented in the evidence of record," and the ALJ considered those limitations in her residual functional capacity determination. (R. 20.) However, the ALJ never specified under which listing(s) Baum's impairments were being evaluated, nor did she explain why Baum did not meet any of the listings, especially those applicable to anxiety and affective disorders. (Appendix 1 to Subpart P of Part 404, Listing 12.04, 12.06.) Likewise, the ALJ failed to evaluate Baum's mental impairments under Section 416.920a of the regulations, as ordered by the Appeals Council.

Therefore, the record as a whole does not support the Commissioner's decision. As requested by Baum, the case should be remanded to the ALJ so that Baum's impairments can be evaluated under Listings 12.04 and 12.06. The ALJ should specifically discuss why Baum does or does not meet the listings considering her impairments. Further, if Baum does not meet those listings, the ALJ must still discuss the physical and mental requirements of Baum's past work and/or other work, and discuss whether Baum's non-exertional impairments preclude such employment.

Additionally, contrary to the finding of the ALJ, the opinions of Dr. Hebert and Dr. Quillin do tend to support the opinion of Dr. Colaluca. Dr. Colaluca has apparently treated Baum monthly since

1997. While Baum should have initially produced those records, the ALJ could and should have eventually requested same from the doctor, especially since he found a contradiction between the treating physician's, Colaluca's, findings and those of Drs. Hebert and Quillin. 20 C.F.R. §404.1512. Therefore, the ALJ should seek additional information from Dr. Colaluca prior to evaluating Baum's claims under the specified listings.

## Conclusion

Based on the foregoing discussion, substantial evidence does not support the conclusions of the Commissioner, and the decision is incorrect as a matter of law. Therefore, IT IS RECOMMENDED that Baum's appeal be GRANTED, that the decision of the Commissioner be REVERSED AND VACATED, and the case be REMANDED so that additional information can be obtained from Dr. Colaluca and so that Baum's claims can be specifically evaluated under Listings. 12.04, 12.06, and any other listings deemed relevant.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered

by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 26th day of May, 2006.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE